BOLIN, Judge
(dissenting).
The majority has adjudged plaintiff entitled to forty acres of land upon which she and her now-deceased husband had continued to reside after the latter’s conveyance of the property, by authentic act, to his sister, the defendant. This result was obtained by declaring the authentic act a simulation and, as such, null, void and of no effect.
I respectfully dissent from this conclusion and from the opinion of the majority in which certain language from a number of cases is quoted as authority for setting the act aside.
In Cernich, the first such cited case, plaintiff propounded interrogatories to defendant asking her to admit or deny that property, which had been conveyed to her by authentic act, belonged to plaintiff because he had advanced the money for it. She answered this interrogatory in the negative and the court held plaintiff was bound by this answer and dismissed plaintiff’s action. During the course of the opinion the general rule was stated:
“ * * * it is the general rule of our jurisprudence that the validity and reality of authentic sales of immovable property can be assailed in only two ways — first, by means of a counter letter, and, second, by the answers of the other party to interrogatories on facts and articles which stand in lieu of, and are equivalent to, a counter letter. — , and that this rule finds its only relaxation where the owner of real estate is influenced by fraud or error to rest his title in another.” (Emphasis added.)
In Childers, the second-cited case, the court found as a fact that there had been a counter letter executed by the defendant wherein she stated: “ [This is to advise that] I am holding the above-described property in my name as security for [Twelve Hundred] $1,200.00 [Dollars] indebtedness that you owe me. * * * ” It was apparent to the court from the quoted language defendant was holding the property merely as security with no intention of retaining it, if and when the debt was paid.
These two cases are cited as authority for the majority’s holding that the letter from Mrs. Sikes to her brother “would constitute a counter letter and prove the sale to be a simulation.” With this conclusion I disagree.
*116 While this letter reflects an aparently gratuitous offer to return or reconvey the property at some future time, it also contains the following language which we deem important in determining whether or not the writing satisfies the requirements of a counter letter:
“ * * * Concerning the matter you wrote me about. It wasn’t any thing I could say since you had already deeded you 40 to me. I am sure you will feel better to know what I will do. Now as long as it dosent cause me any trouble, as long as it is leageal I will go alone with you. Bud I am not for no crooked work. When you are ready for it back you send the papers to me and I will sign them back to you or Josie, what ever way you say. What ever you do dont forgered my name on no papers. If any thing come up I can not witness that it is my signture. I dont intend to ge in any trouble over no land. I will do all I can to help you hold your home.”
While we have no codal or statutory definition of a counter letter it appears that to establish a non-transfer simulation sufficient to destroy the efficacy of an authentic act it is necessary for the letter to show the supposed transferor, A, actually has no intention to part with ownership at all, and the supposed transferee, B, pays none of the recited price. See “Some Aspects of Simulation in France and Louisiana,” 29 Tulane Law Review 22, at 27 and 30.
Since no third parties are here involved, i. e., either forced heirs or creditors, we should look to all the circumstances to determine if this transaction should be declared a simulation and void. Plaintiff has not alleged it is void as being contrary to public policy or in fraud of heirs, creditors or third-party purchasers, nor that it was executed through error or fraud.
Whatever Jacobs’ reason for confecting the deed and having it recorded there is no evidence he had “no intention to part with ownership.” In order to uphold the majority opinion it would be necessary to hold an authentic act transferring immovable property is rendered void ab ini-tio the moment it is determined there is a writing indicating the consideration expressed therein was not paid at the time the deed or act was passed. I do not believe this to be the law.
As pointed out in Succession of Bishop, 228 La. 994, 84 So.2d 613 (1955) even though the consideration expressed in the deed was not in fact paid at the time of its confection, nevertheless where defendant was able to show prior and subsequent advances to her parents the sale would not be declared a simulation. The court cited and relied upon Louisiana C.C. Art. 1900:
“If the cause expressed in the consideration [contract] should be one that does not exist, yet the contract cannot be invalidated, if the party can show the existence of a true and sufficient consideration.” See also Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822, and Smith v. Richardson (La.App. 2 Cir. 1967) 200 So.2d 897.
Once the trial was commenced and the letter purporting to be a counter letter was introduced the trial judge correctly allowed introduction of all written correspondence between the attorneys for the parties as well as oral testimony of various witnesses in order to clarify the transaction and to show that the real consideration was more than equivalent to the cash recited to have been paid. See Smith v. Richardson, supra, and cases therein cited. My review of the record convinces me the judgment of the lower court rejecting the demands of plaintiff was correct and should be affirmed.
Even if the majority opinion is correct in declaring the sale null, I believe the defendant is legally entitled to be subrogat-ed to all the rights of the bank and is entitled to a judgment recognizing her as mortgagee of the described forty acres to *117 the extent of all moneys expended by her for taxes and in paying off the judgment of the Jackson Parish Bank. She was a creditor to the extent of all taxes paid by her from the time of the conveyance until she paid the judgment. Thus she should be accorded the benefits conferred upon her by Louisiana Civ.Code Art. 2161:
“Subrogation takes place of right:
“1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
“2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
******
I respectfully dissent.